M.H. v. Commissioner, Georgia Dept. of Community Health prison Alright Mr. Nonnes. Yes, Your Honor. Good morning Your Honor. We're asking this court to reverse the summary judgment below on each of the class claims and also to reverse the terminate. The trial court below erred in 4 main ways. the first one regards the first class claim is the trial court found erroneously that the department does not give sufficient weight to the treating physician's recommendation. What the federal case law and what the code of federal regulations provide is that the department is to consider the treating physician's recommendation. There's no factual dispute below that the department does that. And on that basis we believe that the department should prevail. The act itself doesn't require that there be any particular weight given is your argument. And neither did the decision below. And on the second class claim, Your Honor, the trial court erred in finding that the department is shifting skilled nursing care over to caregivers in order to wean them off of the program. First off, there's no factual finding below showing that anyone was removed from the program. And then second, the trial court sort of adjusted that claim and basically stated the department can never reduce skilled nursing hours that are provided at the initial level. When somebody enters the program, that is clearly erroneous based on Moore and federal law. And then also the trial court found. That's not. When you use the term clearly erroneous, you don't really mean that. I do not. I apologize. I grabbed on to that term, unfortunately. It was erroneous, Your Honor. And the second part that was erroneous is the trial court below found that the department can't reduce based on stability. Again, this issue had come up in Moore. It found that the department can reduce based on stability. And so on that basis, we believe this court should reverse the summary judgment decision and find in favor of the department on that second class claim. On the third class claim, the trial court erroneously found that the department has to. Well, the trial court didn't make a determination on the third class claim. It said that it was moved in the light of its earlier determination. So it seems to me we don't have jurisdiction over that. We argue that it found that the third class claim is based upon the granting of the second class claim. Right. So if this court were to reverse, which we hope it will. I don't know how we can. We have jurisdiction on interlocutory appeal to review a non-decision. I mean, the court just did not reach the issue because it concluded that it was. So it goes back. It seems to me we have to have a ruling before we can review it. Well, the trial court below went through its analysis on the third class claim. The appellees in our brief, of course, analyzed this claim as well. And we would ask the court to review it or at least provide guidance to. Well, it didn't grant a summary judgment on that claim, and it didn't issue a permanent injunction, more importantly, based on that claim. I say interlocutory appeal. It's an appeal from a permanent injunction, but we don't have an injunction on that claim. Right. Well, I agree that the trial court found it was moot, Your Honor, and mootness would affect your jurisdiction here. We would ask this court to provide guidance to the trial court below, at least on that claim. Well, we don't give advisory opinions around here. Absolutely, Your Honor. But if we look at the second class claim, Your Honor. Let me ask you a quick question about jurisdiction that sort of follows up on Chief Judge Pryor's point. So one of the things that our jurisdictional panel said was still at play here was the preliminary injunction. It said to the extent it was inextricably entwined with the permanent injunction. I'm not sure that's right. And so it seems to me that the permanent injunction replaces the preliminary injunction, and there is no preliminary injunction anymore. And I just wanted to float that out there and see what your response was to that, that there is no preliminary injunction anymore. There's a permanent injunction, and that's what we're reviewing is the permanent injunction. Well, we agree that you're correct, obviously, in interpreting the law in that way. Well, obviously, I mean, that's, you know. I mean, what our case law has said is that the preliminary injunction and the permanent injunction are merged when the permanent injunction is issued, right? And if you vacate the permanent injunction, that necessarily means that you vacated all injunctive relief, right? Absolutely, Your Honor. And, of course, the permanent injunctions rely specifically on the preliminary injunctions in granting injunctive relief. The court called the injunctions permanent, but there was no final order. Were they in substance, actually, permanent injunctions? Yes, Your Honor. The trial court entered specific permanent injunctions for eight class members. They have specific orders in the record. With respect to two claims? Based upon, yes, based upon the summary judgment order, that is correct. But did there have to be final judgment on those claims for the injunctions to actually be permanent? I don't know that you need the administrative determination of saying that the case ends in the final order, but the court's terminology and entering of the injunction is this is a permanent injunction. There's no time limit that this expires in a certain amount of time. I mean, I don't think we can go past what the court has entered. I mean, they went out of its way and said specifically this is a permanent injunction for this particular plaintiff. But you would never be able to get to a final order until all claims and all parties have been adjudicated, right? And what the district court did was granted summary judgment on two claims and entered eight permanent injunctions with respect to those two claims.  Correct. That is correct. And we have jurisdiction to review a permanent injunction. Yes, Your Honor. Without regard to whether there's been a final order resolving all claims and all parties. Yes, Your Honor. 1292, I believe. Yes. So just one more, just kind of clean up on jurisdictional questions. So we have jurisdiction to review the summary judgment order only insofar as it is the basis for the district court's permanent injunction, correct? The permanent injunctions give this court jurisdiction to review the case. I would say the whole entire summary judgment order is subject to review because the court relied on it. It's only what is inextricably intertwined with the permanent injunction, it seems to me. Yes, exactly. The trial court relied on the summary judgment order in entering those permanent injunctions. Yes. And this is just, I mean, I'm sorry to sidetrack you on these jurisdictional issues, but just a question for sort of credo language in an opinion that ruled in your favor. If we were to reverse the district court on the permanent injunctions, which we clearly have jurisdiction to do, would we also reverse the district court's summary judgment order or would we just reverse the preliminary injunction and the basis for that decision would be that the summary judgment order was incorrect? Does that make sense? No, no. I hear you, what you're saying, but even in that situation, you're effectively reversing the summary judgment order. But what the jurisdictional order from this Court said is that the summary judgment order and the permanent injunctions are subject to this Court's review, so they're both before you today. Okay. So if you're right, we would vacate the permanent injunctions and reverse the summary judgment orders. Correct. Insofar as they were supportive of the permanent injunctions. Yes. And clearly the trial court relied upon that. Right. And your position on the summary judgment is that these are matters that go to trial, basically. I mean, I think you filed your own cross motion for summary judgment, but the district court denied that and we're up here. Right. But it's not in favor of the appellees on that. Right. But both parties argued that there was no genuine issue of material fact. The question is whether with respect to these two claims, what the State is doing violates the Medicaid Act or not. As I understood your argument, your argument is what the State is doing, in fact, that's what you just said this morning to begin your argument, does not violate the Medicaid Act. Right. And that's before this Court. That's an error of law. Yes, sir. That's correct. There's no factual dispute that the Department considers the treating physician's recommendation. This Court can decide that issue. And on all, again, I understand this Court pointed out the third claim, but I would assert for all three, it's certainly in our brief, it's our assertion. Yes. So here's my question about that. I think that's your argument, but in Moore, the case that, you know, is directly on point here, in my view, and your argument. Yes. It seems like we remanded for trial in that case. It seems like what we did is we said you need to have a trial. If you look at our summary judgment motion that we filed in the court below, we actually filed a motion for partial summary judgment. We believe that this Court can review the three class claims and vacate and reverse those in favor of the Department. But even going beyond that, you would then have, you would still have, and if you undid the class, which we would assert, you know, obviously it's not before this Court, but we understand that, if you undid the class and reversed the summary judgment orders, you would still have a trial on the two named plaintiffs that would be left, E.C. and C.C. Because there is a factual determination about whether or not the number of skilled nursing hours are reasonably appropriate for them. Okay. Could you just, I'm sorry, could you just explain that to me so that you would have a trial on those claims with respect to those plaintiffs? But with respect to the other plaintiffs, I think I understand your point. With respect to the other plaintiffs, there are no disputes of material fact in your view? Well, what's before the Court currently is the class, the class claims. And with regards to the class claims, there can't be. Well, what's before us is eight permanent injunctions, right? It has to be two. With respect to those eight permanent injunctions, just play that out for me. How does that work? We would vacate those and then remand for a trial with respect to two of the plaintiffs. On the two named plaintiffs is what we would assert that would need to have a trial. And the third class claim that hasn't been resolved. Correct, Your Honor. Yes, that is what would happen.  Okay, Mr. Norse. Good morning, Your Honor. To the police and court. On the question of the permanent injunctions, those were decided apart from the summary judgment order? No, the basis for them are aspects of the summary judgment order. I mean, our motions panel earlier said that they're inextricably intertwined with the permanent injunction and we have to review both, right? Yes, Your Honor. So we have at least pendant jurisdiction over that? Yes, from a jurisdictional perspective. But from the orders themselves and the facts and the law that they considered, they did not rely on the summary judgment order. Those were each effectively heard and decided separately on the facts as presented. Well, then what's the basis? So if that's your position, I guess I'm confused because I thought the way the district court's reasoning went, more or less, was first, rules on the summary judgments. Well, first, preliminary injunction. Preliminary injunction is based on the record in front of the district court, testimony, stuff like that. And then you move up to summary judgment. The parties follow. Cross-pursuit of summary judgment, district court rules in favor of the plaintiffs on summary judgment, and then there's the permanent injunctions. Is my missing what happened? Well, Your Honor, we conceived of those as the summary judgment issues were class issues. Those were summary judgment as to the overall class. Which hasn't been certified yet, right? Which, Your Honor, it hasn't been certified. Oh, okay. It's just not in front of us. Part of the state has tried to appeal that to this court. Right. It's just not in front of us. I'm sorry. But it enters eight permanent injunctions with respect to individual named plaintiffs and some unnamed class members, right? Yes, Your Honor. And part of that was... And the basis for that is everything that it has held in the summary judgment order. Well, I guess... With respect to those individuals who are benefiting from a permanent injunction. As to the conclusions of law, yes. Yes. And if the conclusions of law are wrong, then that would mean we have to vacate the permanent injunctions.  Well, how is this... To go to that then, I mean, how is this not just flatly in contravention of Moore, the previous case that decided this exact issue? How is the... Yeah, how is this consistent with Moore? How is the district court's reasoning on summary judgment consistent with Moore? So the way I see Moore is that it's providing a framework for trying to resolve these disputes because they keep arising. You have the treating physician on the one hand opining as to what it is that their patient needs. The Medicaid Act sets the treating physician out as the primary determiner of what that is. But not the final. Not the final. No, no, Your Honor. I'm just trying to... All the state has to do is consider it. The state can still make a determination that's different from the treating physician's determination. Absolutely, Your Honor. But I think that part of this is situating each party in its role. Moore makes that quite clear that there are two roles here. Neither is the final arbiter. So if the treating physician is laid out as the primary determiner of what's medically necessary, both as Moore but also in the statute itself. EPSDT says the screener shall do these things and what the screener finds is what triggers the correct or ameliorate provision. What the screener finds is the ability to correct or ameliorate the condition. That's what the child's entitled to. Moore says, though, that the state may still review the medical necessity of the amount of nursing care prescribed and make its own determination. Absolutely. And we've never disputed that. That's all this record shows that the state is doing. But, Your Honor... And they're using a score sheet, they have a medical team, and they review all of it, including what the treating physician recommended, and they make their own determination. The act, Moore says, specifically allows that. But Moore, I think, and EPSDT provision itself, poses a higher burden for the state than it recognizes. It says it just has to be reasonable. That's not the duty here. Moore makes it quite clear that the duty is to determine whether or not they've sufficiently provided care that will correct or ameliorate those conditions. It has to be sufficient in amount and duration to reasonably achieve the purposes of private duty nursing services. But the provision at play here, Your Honor, is EPSDT, early periodic screening diagnosis and treatment. And that provision specifically says you have to provide corrective and ameliorative treatment. Let me give a little bit of a background because Moore references this. Prior to 1989, the state had tremendous discretion to determine what kind of care it was going to give kids. In 1989, Congress comes back and amends the Medicaid Act specifically to add this provision, saying, you know what, that discretion is gone. Now you have to provide all of this care, all the categories of service that are provided in the Medicaid Act. That is a huge change. And they specifically said for kids under 21, you've got to provide all corrective and ameliorative care that's necessary for those conditions as found by the screener. So I submitted that Congress laid out a much heavier burden that is recognized in Moore, and that the state doesn't simply discharge that duty to actually consider the treating physician's determination, simply by saying we considered it. The scoring sheet contains nothing of what the treating physician has determined, what the treating physician requests. It wouldn't even be there, but for the treating physician, you know, making a determination that it's needed. Right. I mean, so it's necessarily considered. Your Honor, I think the facts don't bear that out. I think on the one hand, you've got the scoring sheet, which is essentially drafted or filled out by a review nurse. When you go to the actual review meetings, the testimony shows that effectively the physicians who are participating in the review are participating by telephone. They have none of the documentation in front of them. They simply are taking an oral summary from the reviewing nurse of what she found in the record and then making a decision. So is it your position that we can look at the Medicaid Act and determine that it requires, as a matter of law, that they have to be there in person in a room together and they have to consider it for seven minutes as opposed to three minutes? I mean, I don't know where in the Medicaid Act we draw those kinds of lines. There's just nothing in there to suggest anything like that. And that's not what we're saying, Your Honor. We're saying that the State has discretion about how it does its review. Isn't it, sorry, isn't it undisputed that the reviewing nurse who prepares the score sheet actually has the recommendation of the treating physician and bases the score sheet on that? No. The score sheet is based on the treatment needs that the nurse has gleaned from the record and passes out different things on the scoring sheet which then have points attached to it. Right, but she's reacting to something, which is the recommendation of the treating physician. So it is considered in that sense. It's considered, I guess, in a sense, it's part of the record of stuff that she's reviewing. Yeah, that was my point a moment ago. You wouldn't even be there with a medical team reviewing a score sheet but for the treating physician's recommendation, right? Yes, Your Honor, but at the end of the day... It's necessarily considered. The fact that they're just there means it's being considered. Right, but the proof is in the pudding. The proof is that when they issue... You just want deference to the treating physician. That's what you want. No, Your Honor. What we want is what Moore requires. Which is that both parties have a role to play here and that the trier of fact is put in the place of being able to determine whether or not the state, given what the treating physician has determined, has discharged its duty to provide sufficient care for these kids to ameliorate their condition. These are the most medically complicated kids in Georgia. The issue, though, is when the state issues that notice letter and as a basic matter of due process, they have to tell you why they're doing what they're doing. They don't ever address what the treating physician has said. It seems to me whether the number of hours that are approved for any particular child are sufficient to ameliorate the condition is a separate and distinct question from what the district court decided and what the basis for its injunction is. That issue is not before us. The issue that's before us is whether this review process, in and of itself, somehow violates the Medicaid Act. I'm at a loss to understand, in the light of the text of the Act and our decision and more, how the district court could have possibly concluded that it violates the Act and where the Act would require that the line be drawn differently. I think the trial court has tried a number of these cases, has heard these arguments repeatedly, and from that record gleaned that the state does not take into account. It says it does, but it does not substantively take into account what the treating physician is doing or determined. It simply makes its own determination and never explains why. It explains either why what it's approved is sufficient or why what the treating physician has determined is not right, is not correct, has misdiagnosed something, has prescribed inappropriate treatments. It never explains why. Can I ask you this? It's related but slightly different. It's my understanding that the state has an expert, and I can't pronounce this person's name, Papsiak. Why isn't the state's expert, the existence of that expert, that says this is okay enough to go to a jury on this question and preclude summary judgment? I think because, as I indicated, Your Honor, the trial court has heard a number of these hearings and cases. Actually, prior to this case even being filed. The last thing, I think if this were a preliminary injunction, the trial court gets to hear testimony and make fact determinations and do all sorts of stuff at a preliminary injunction, which is probably why they didn't appeal the preliminary injunctions when they were entered. But now we're at summary judgment, and we said in Moore, I'm quoting from Moore, when the state's and patient's expert disagree, material questions of fact arise as to whether a treatment is medically necessary. So, I mean, why isn't that just saying, look, if the state has an expert that says that what they're doing is fine, the trial judge may disagree, but it's not for the trial judge to determine material issues of fact, right? Well, the court was proceeding on the voluminous record before it. It had seen this over and over again, that the state, rather than actually contending with what the treating physician was determining, was simply arbitrarily deciding on something else and never explaining why. Explain what the treating physician had determined. Let me make sure I understand something. Both sides moved for summary judgment, right? Yes, Your Honor. Both sides agreed that there was no genuine issue of material fact, and the claim about which the district court ruled on summary judgment was whether the review process, about which there's no genuine issue of material fact, regardless of whether what the state has approved will ameliorate the condition or not, whether the treatment needs to be more or less, the review process itself, everyone agrees what happens in the review process, right? Yes. The question is, does that process violate the act? Yes. And the district court ruled, as a matter of law, that it did. Yes. And entered a permanent injunction based on that. Yes. There were two issues. One was not giving any sufficient weight to the treating physician, and the second was this process where they teach and wean.  And the expert opinion, though, is not what is an expert opinion about what happens in the review process. The facts of what happens in the review process are undisputed, right? Right. Okay. Right. And the court is ruling that it found that both the failure to give the treating physician's determination any weight and this teach and wean policy both violate the Medicaid Act and prevent these children from getting the ameliorative care that they need and present, you know, substantive barriers to actually trying to get the care they need. Right. And we just have to decide whether that's what the Medicaid Act requires or whether that's a matter of law.  And I think that on the teach and wean policy, the Medicaid Act requires that licensed nurses actually provide nursing services. And there's nothing in the Act that says that you can take care of two. But the state can make rational distinctions between patients that are not distinctions based on their conditions but other reasonable distinctions. And here you have some patients who have skilled caregivers and others who do not. The state has a responsibility to make sure that the limited resources that it has to run the Medicaid program, that they're utilizing those resources to provide as much care as they can for the indigent as they can. And to the extent that they make that distinction, hey, this patient has a skilled caregiver that means less is needed from private duty nursing services. That is not a distinction based on the condition and it is a reasonable distinction as a matter of law that the state can make, it seems to me. But they're making that distinction without considering the actual competency and capacity of those caregivers to provide the care. They're just making... Well, the capacity is the third claim, which is not, it seems to me, before us. Whether they can have a weaning policy at all is the question. Right? Yes. Yeah. It's this... Well, and if they can... Whether they can have a weaning policy at all and what are the criteria for that? Are they allowed to require unlicensed, unskilled parent caregivers to provide skilled nursing? I don't believe so. It'd be wrong to say they were unskilled. I mean, these are caregivers who, through training, have learned skills, aren't they? Isn't that the basis of the weaning policy? Yes, but at the same time, the Medicaid Act and the Georgia Nurse Practice Act require licensed nurses to perform nursing. Nobody else is allowed to do that. We license them for a reason, to make sure that these kids have appropriate, safe care so that there's a consistency of the quality of that care. And we actually know that these kids are in the hands of people who have been trained to not only provide care but also to assess the care needs of those children and when there are changes in their condition, whether or not care may be needed differently. Okay, Mr. Norris, you've gone over, but you were answering our questions. So, Mr. Nonnis, you've saved four minutes. Your Honor, just on the first point, the overarching injunction order, Document 433, specifically talks about the summary judgment order in the PERS. Page 1 and 2, it goes through each class claim. And when it talks about the second class claim, it states that the court held the determination as to whether private duty nursing services are medically necessary should be based on whether the services are medically necessary to correct or ameliorate an eligible child's condition, not on whether the child's caregiver is able to provide those services. So the caregiver capacity issue is intertwined with the second class claim. So the third class claim, I would assert, can be decided with regards to. I understand. You keep trying to get that in front of us, but. I understand, Your Honor. Thank you. With regards to the. I hear you. With regards to the injunction orders, Your Honor, the vast majority, if not all, were temporary restraining order hearings that were done on a very short time frame. Those became preliminary injunctions without hearings, and then the preliminary injunctions became the permanent injunctions again without hearings. So the only factual development on those injunctions and the basis was on a temporary restraining order. Well, the summary judgment record. Oh, yes, yes, of course. That's what it's really based on, right? Yes, absolutely. And then the third thing. About which both parties agreed there was no genuine issue of material fact. We encourage this court to decide all three class claims, Your Honor. And with regards to the third issue, we would assert to this court that EPSDT does not remove the department's discretion. If you look at the Moore case, it states that the department is to provide nursing hours or approve nursing hours sufficient amount to reasonably achieve the purposes of private duty nursing. Again, reasonably is something the department can determine. And that's all I have, Your Honor. If there's no other questions. I don't hear any. Thank you, Mr. Nanas. We are adjourned for today.